## ARTHUR M. EASTMAN & others vs. GEORGE S HILLARD.

The provisions of *St.* 1844, *c.* 178, concerning future proceedings for the relief of insolvent debtors, so far as they are inconsistent with the provisions of previous statutes on that subject, apply to and must regulate cases in which proceedings were commenced under those statutes before the statute of 1844 took effect.

Since *St.* 1844, *c.* 178, took effect, an insolvent debtor against whom a warrant was previously issued under *St.* 1838, *c.* 163, but whose creditors have not held a second meeting, is not entitled to a discharge at a second meeting of his creditors, held not more than three months after the date of such warrant; although he would have been so entitled, if the act of 1844 had not been passed.

*It seems* that the direction, in *St.* 1838, *c.* 163, § 7, that the judge of probate or master in chancery shall appoint a second meeting of the creditors of an insolvent debtor, to be held not more than three months after the date of the warrant to the messenger, is not repealed by *St.* 1844, *c.* 178.

THE petition in this case was filed on the 18th of June 1844, and the opinion of the court was delivered on the 22d of said June.

*G. Bemis*, for the petitioners.

SHAW, C. J.   Questions arising under the insolvent law of the State and its several amendments, requiring, as they do, a construction of new statutes, embracing provisions somewhat numerous and complicated, and affecting to a great extent the rights of debtors and creditors, are now among the most important presented for the consideration of the court.

This is a petition of Messrs. Eastman, Fondey & Co., insolvent debtors, for a writ of mandamus, directed to the master in chancery, before whom the proceedings in the matter of their insolvency are pending.   The petition sets forth, that these proceedings were commenced by their own petition to the master, on the 29th of March 1844 ; that he sustained such petition and granted a warrant; that regular proceedings were ordered and had, and a first meeting appointed for the 9th of April 1844; that said meeting was duly held, debts proved, and

assignees chosen, who duly accepted the trust. The petitioners then state, that they applied to the master to call a second meeting of their creditors, to be held within three months from the date of the issuing of the warrant, to enable them to complete their schedule, take and subscribe the oath required by law, and apply for their discharge ; that the master has declined issuing a notice for the second meeting, within three months, which are now nearly expiring; and the prayer of the petition is, that a writ of mandamus may go from this court requiring him to do his duty in this particular.

The case involves the question, whether the petitioners' right to a discharge is to be governed by the *Sts.* of 1838 and 1841, or whether it is to be governed by the provisions of the recent act, *St.* 1844, *c.* 178. This act was passed on the 16th of March 1844, and went into operation thirty days after, to wit, on the 15th of April. It appears, therefore, that the proceedings were commenced after this act had passed, and that they had made some progress when it went into operation.

The main ground of the petitioners' claim is, that they are entitled to their discharge on the terms of the acts of 1838 and 1841, and are not bound by the provisions of the recent act. The *St.* of 1838, *c.* 163, § 7, provides that a second meeting shall be called within three months after the date of the warrant ; at which creditors may prove their debts, the debtor may amend his schedule, take and subscribe the oath, and if he is not opposed, the master may then grant him a discharge. The question is, whether this right is controlled and modified by *St.* 1844, *c.* 178, which prescribes different terms on which alone a discharge may be obtained, and different modes of proceeding, on the part both of the debtor and the creditors. On this question, the court are of opinion, that the act of 1844, being, in its whole character and all its provisions, in amendment of the preëxisting laws, so far as it was prospective in its operation, so far as it directed proceedings which were then future, did apply to cases commenced at the time when it went into operation. The fourth section provides explicitly that an insolvent debtor, whose assets shall not pay fifty per cent. of his

36

debts, shall not be discharged, if a majority in value of his cred-
itors, who have proved their claims, shall dissent therefrom
within six months after the date of the assignment. This is
plainly inconsistent with the provisions of § 7 of *St.* 1838,
directing the time when, and terms on which, a discharge
should be granted ; and therefore by the act of 1844, § 17,
the former was repealed, if it applied to a case commenced.
But the statute does apply, in terms, to future proceedings
under cases then commenced; and the time not having come,
when that act went into operation, at which the insolvent could
apply for his discharge, or the master grant it, such application
for a discharge, the right of the creditors to oppose, and the
power of the master to act upon it, were all future, and must,
we think, be regulated by the late statute ; and the provisions
of the act so regulating future proceedings were prospective in
their operation, and not inconsistent with the just exercise of
legislative power. *Ex parte Lane,* 3 Met. 213.

We are therefore of opinion, that although proceedings had
commenced, yet as the time had not arrived for acting on the
question of discharge, the insolvents are not now entitled to
claim their discharge until six months from the time of the
assignment, because that time is allowed to the creditors to
prove their debts, and thereby qualify themselves to act on the
question of dissent ; and the same time is allowed the assignees
to ascertain whether the assets will pay fifty per cent. ; and if
not, for a majority of the creditors to dissent, and thereby pro-
hibit the discharge.

Again ; § 8 of *St.* 1844 provides, in addition to the various
causes which should prevent a discharge under prior statutes,
that the discharge shall not be granted if the debtor shall
have given certain preferences therein specified, if the creditor
proves that he had reasonable cause then to believe himself
insolvent. This implies a judicial inquiry and adjudication by
tne master, upon contested facts, in which any creditor may be
heard as a party. Such a creditor, we think, is one who shall
prove his debt within the time limited for creditors, who shall
have proved, to dissent ; which is six months ; and therefore if

cannot be heard or decided, on the application of the debtor, within the six months.

It was argued for the petitioners, that the provisions of the two acts might to some extent be reconciled in this way ; viz. that the master might grant the certificate, at the second meeting, to be held within three months, pursuant to *St.* 1838, but that the debtor should not be discharged by it, if the creditors should dissent in six months. We think this would be a forced construction, not necessary to accomplish any object contemplated by the legislature. When they speak of granting a discharge, we have no doubt it ordinarily means a certificate of discharge. But the construction contended for would render the certificate utterly useless, because its efficacy would depend in no degree upon the adjudication of the master and the facts testified, but upon facts to be proved *in pais*, to wit, whether the assets had paid fifty per cent., and whether a majority in value of the creditors had dissented within six months. Such a contest, in each particular case where a discharge is pleaded, would be attended with great inconvenience. But our construction, we think, is fortified by the provisions of the 3d section of *St.* 1844, in relation to fiduciary debts. These shall not be discharged under the act; but they may be proved, and the dividend shall be deemed a payment *pro tanto,* and every certificate of discharge shall contain a statement of the debts created as aforesaid, to be exempted therefrom. From this clause it is manifest that the debts are to be proved before the certificate of discharge is granted; and if, by a fair construction of the other clause, creditors, authorized to dissent, are to have six months to prove their debts, then it is clear that the certificate is not to be granted till the expiration of the six months allowed for the proof of debts and the dissent of creditors.

The only ground on which this petition for a mandamus to the master could be sustained is, that the petitioners have a right to a second meeting within three months, in order that they may then apply for and obtain their discharge. We are of opinion that for this purpose they are not entitled to it, because they could not then apply for their discharge, nor could the master

grant it.  This disposes of the present application, so far as these petitioners are concerned.

Whether it is the duty of the master, under the provisions of the statute, to give notice for a second meeting within three months, for the general purposes contemplated by the insolvent laws, perhaps it is not necessary now to decide ; but as we see nothing to repeal the direction in § 7 of *St.* 1838, *c.* 163, and as there may be some useful objects to be accomplished by it, we are inclined to think that it is.   At such meeting, the creditors may prove their debts, the debtor may correct and complete his schedule, and take, subscribe and file his oath ; all of which tend to secure the rights of the several parties, to speed the proceedings, and to facilitate a regular and early settlement of the estate.

The late act, *St.* 1844, *c.* 178, § 1, directs that a court shall be held for these purposes, on the second Monday of every month ; and the proceedings in such case are to be had only after due notice to all parties in interest.   It is still therefore necessary, that due notice be given by the master of the time and place of such second meeting.